Mazzarelli, J.P. (dissenting).
“[W] eight of the evidence review requires a court first to determine whether an acquittal would not *216 have been unreasonable. If so, the court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions. Based on the weight of the credible evidence, the court then decides whether the jury was justified in finding the defendant guilty beyond a reasonable doubt” (People v Danielson, 9 NY3d 342, 348 [2007]).
In this case, the jury’s decision to convict was supported by the trial testimony. The complainant testified that she was standing very close to defendant when she allowed him and his accomplice to enter the store where she worked after closing time. She stated that she looked at defendant’s face when he came in and saw it clearly. She further testified that before the robbery began, she spent time walking around the entire store with defendant, showing him and his accomplice the merchandise. She recounted that as defendant tied her up in a back room, she was looking at his face, which she could see clearly. Based on this testimony, there is no reason to question the jury’s conclusion that the complainant accurately identified defendant as her assailant, notwithstanding minor discrepancies in her testimony, such as whether defendant and the other robber were wearing gloves. Certainly, on this record, this Court is in no better position than the jury to determine whether the complainant’s testimony was credible, including whether the jury properly resolved inconsistencies in the testimony (see People v Robinson, 84 AD3d 590 [2011], lv denied 17 NY3d 809 [2011]).
This extends to the surveillance video, which defendant relies on as highlighting some of the complainant’s inconsistencies (see People v Funches, 4 AD3d 206 [2004], lv denied 3 NY3d 640 [2004]). I note, with respect to the video, that it is of far less use to this Court than it was to the jury. The jury, after all, had the opportunity, unavailable to this Court, to compare the images of the robbers on the video to defendant, who was seated in the courtroom. This Court obviously has no basis to determine that the jury was incorrect in determining that defendant was one of the people it saw in the video (see People v Grady, 67 AD3d 563, 564 [2009], lv denied 14 NY3d 888 [2010]).
Faced with these unassailable facts, defendant now argues that the complainant was psychologically incapable of accurately identifying her assailants. This, he asserts, is because of the stress she experienced during the robbery, much of which, he *217 claims, must have been brought on by the fact that one of the men had a gun trained on her for part of the incident. He also asserts that the complainant’s memory of her assailant must have decayed between the time of the incident and the time she spotted him on the street. In his brief, defendant cites to numerous psychology journals which discuss the current research on the stress-related fallibility of memory in the context of witness identifications. The majority also refers to such scientific theory in holding that the conviction was against the weight of the evidence.
The majority’s conclusions are error. First, the complainant’s testimony established that she had ample opportunity to observe her assailants before they revealed that they were in the store to rob it. The record shows that there was a significant period of time when she was looking at the perpetrators while not under the type of stress which defendant now asserts renders crime victims incapable of accurately identifying suspects.
Second, any discussion of the science of witness fallibility in the area of identification has no place in this case because there was no expert testimony concerning it. The purpose of a weight of the evidence review is to determine whether the record supported the jury’s verdict. If the jurors were never presented with certain evidence, a reviewing court cannot consider it in determining whether to reverse a verdict.
This fundamental concept of appellate jurisprudence, being bound by the record before us, applies equally to scientific evidence, as it does to any other type of evidence. Where the issue in the case is not one commonly understood by laypersons, expert testimony is necessary to inform the jury. Here, the majority finds fault with the jury for not having considered the corrosive effects of event stress, exposure time, and weapon focus on a person’s ability to confidently identify a perpetrator without any evidence before them on these issues. The Court of Appeals has expressly held that these scientific theories are “counterintuitive, which places them beyond the ken of the average juror” (People v Abney, 13 NY3d 251, 268 [2009]). Accordingly, expert testimony was indispensable in this case. Simply, there is no basis on this record for reversing the conviction as against the weight of the evidence, notwithstanding defendant’s failure to introduce an expert witness.
Again, the evidence which we are required to review is comprised of the trial record only (see People v Dukes, 284 AD2d 236 [2001], lv denied 97 NY2d 681 [2001]). The trial record *218 contains no psychological evidence from which the jury could have inferred that the complainant’s testimony that defendant was her assailant was fallible. Constrained as we are by the record evidence, which amply supports the verdict, it is simply not reasonable to conclude that the jury had an insufficient basis for finding defendant guilty. Accordingly, I respectfully dissent.
Saxe and Moskowitz, JJ., concur with Freedman, J.; Mazzarelli, J.P., and Manzanet-Daniels, J., dissent in a separate opinion by Mazzarelli, J.E
Judgment, Supreme Court, Bronx County, rendered January 15, 2008, reversed, on the facts, the conviction vacated, and the indictment dismissed.